# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RULETTA WATSON, ) | 1:05cv0983 DLB |
| ) | |
| ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, ) | SOCIAL SECURITY COMPLAINT |
| ) | |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## BACKGROUND

Plaintiff Ruletta Watson ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her applications for supplemental security income on September 9, 2002, alleging disability since 1993 due to her inability to walk too far, pick up anything heavy, back and leg pain, and a bad memory. AR 117-121, 206-215. After being denied both initially and

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On December 5, 2005, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 80-83, 86-89, 90. On September 8, 2004, ALJ David E. Flierl held a hearing. AR 482-501. On October 15, 2004, ALJ Flierl found that Plaintiff was not disabled. AR 15-24. On May 7, 2005, the Appeals Council denied Plaintiff's request for review. AR 8-11.

<u>Hearing Testimony</u>

ALJ Flierl held a hearing on September 8, 2004, in Bakersfield, California. Plaintiff appeared with her attorney, Geoffrey Hayden. Vocational expert ("VE") Ken Ferra also appeared and testified. AR 482.

Plaintiff testified that she was 49 years old and completed the eleventh grade. AR 485. She is around 5 feet, 4 inches tall and weighs 286 pounds. She can read and write "a little bit" and has a driver's license but does not drive a car. AR 486.

She last worked in 2000 for about four weeks. She could not remember back to 1989 and indicated that she had a memory problem. AR 486. She believed she could not work because she loses her memory a lot and is a very depressed person. AR 487. She has been receiving treatment for her depression for almost one year and goes once a week. AR 487, 493.

Plaintiff has a prison history and has stolen things over 20 times. She got out of prison in 2002 and is no longer on probation or parole. AR 487.

When asked again why she couldn't work, Plaintiff added that she has back and knee problems, and that she can't sit or stand too long. AR 488. She uses a cane that was prescribed and a knee brace, but she was unable to put the knee brace on before the hearing. She wears it on her left leg, although she needs one on both. She was on light duty while in prison because she couldn't do many jobs. Light duty included "walk[ing] around and just do[ing] things – bathroom things." AR 489.

Plaintiff has trouble walking and she estimated that she could walk "from here to out there by the door from around the corner" before needing to stop. AR489. She can't lift too much with her cane, but can lift forks and plates to eat. AR 490. She can stand for about 30 seconds before needing to sit, and could sit for about five minutes before needing to stand. AR 490. When asked about her physical therapy in May 2003, she indicated that she couldn't

remember. AR 490. She testified that she could not lift 50 pounds on occasion and 25 frequently, as Social Security had found. AR 491.

Plaintiff testified that she hears voices, and that the Monday before the hearing, she wanted to hurt herself. Her daughter brought her to the Crisis Center. AR 491.

Plaintiff explained that she also has problems with her left wrist swelling. Both hands tingle. AR 491. She can pick up a pen and penny with her left hand. AR 492. When asked if she had been treated for hepatitis A, for which she had tested positive, Plaintiff stated that she didn't know she had it. One of her medications makes her sleepy. AR 493.

Plaintiff lives with her brother and her children, and receives AFDC and food stamps. AR 493-494. She indicated that a normal day is spent behind closed doors, "in a room of darkness and sheet over my face." AR 494. Plaintiff explained that she doesn't like to be around people too often and stays inside most of the time. She is in pain all the time, with the worst pain in her back and knees. She lays down during the day and elevates her legs, and rated her pain as an eight out of ten. AR 494. She does not do housework, cook, or go grocery shopping. She has trouble dressing and cleaning herself, and her only exercise consists of walking to the restroom and back. AR 495. She has lost interest in things, has crying spells, is paranoid, and is unable to concentrate on the same thing for over two hours at a time. AR 496. She takes Vicodin every 4-6 hours. AR 498. Plaintiff couldn't remember if she was only supposed to use the medicine at night. AR 499.

Plaintiff explained that she got out of prison in September 2002, and hasn't looked for work since she was released. She doesn't go outside because she doesn't trust herself in stores or around people. AR 497.

For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age, education and prior work history. The person would be limited to the light level of exertion with occasional stooping, crouching, and crawling, and would be precluded from frequent squeezing and gripping with the left hand. This person would be limited to simple, repetitive work and could have only limited contact with the public. The VE testified that this person could perform

some hand packer positions, approximately 24,000 in California, reduced by 40 percent to accommodate the preclusion from frequent squeezing and gripping. AR 499.

Plaintiff's attorney added the additional limitation of an inability to concentrate for two hours at a time. The VE testified that this would preclude work. AR 500. If this person could not perform frequent gripping or squeezing with either hand, this person could not perform any work. AR 500.

Medical Record

Medical records from 2000-2001 indicate that Plaintiff was treated for back pain and other complaints, such as heartburn, cough and bronchitis. AR 261-270.

On April 28, 2001, Plaintiff saw Norman Linder, M.D., for a consultive examination. She complained of back pain from the neck down, bilateral lower extremity pain from her low back to her feet, and bilateral hand numbness. On examination, she moved very slowly and showed poor effort secondary to complaints of pain. She used a walker. She had characteristic tender points of fibromyalgia throughout her body, limited range of motion in the cervical spine and lumbar spine secondary to complaints of pain, and positive median nerve compression test without atrophy in either hand bilaterally. He diagnosed fibromyalgia, carpal tunnel syndrome without signs of atrophy in either hand, and morbid obesity. He opined that she could frequently lift up to 15 pounds, 30 pounds occasionally, stand and/or walk for a total of six hours in an eight hour day, sit for a total of six hours in an eight hour day, but should refrain from frequent squeezing and gripping with both hands. Plaintiff also appeared to have limitations in visual acuity. She did not need an assistive device for any distance or terrain. AR 271-274.

On April 29, 2001, Plaintiff saw Ann McIntosh, M.D., for a consultive psychiatric examination. Plaintiff indicated that she could not work because she could not bend or take care of herself. AR 276. Plaintiff stated that she has a longstanding history of shoplifting and has served at least five different sentences. On mental status examination, her attitude was pleasant and behavior cooperative. Her thought content was positive for suicidal ideation without a plan, and although Plaintiff described her mood as sad, her affect was incongruent with a sad mood and was quite full. Her concentration, persistence and pace were a bit slow, but otherwise

unremarkable.  Dr. McIntosh diagnosed depressive disorder, not otherwise specified, rule out dysthymia, rule out major depressive disorder, and personality disorder, not otherwise specified, rule out avoidant personality traits, rule out Cluster C traits.  Dr. McIntosh opined that Plaintiff could perform simple and repetitive tasks, but this would be limited due to decreased range of movement.  Plaintiff would have difficulty with coworkers and the public due to mild paranoia.  She could perform work activities on a consistent basis if it did not require significant labor, and could maintain regular attendance.  Dr. McIntosh believed that Plaintiff's problem was somewhat treatable with medication and therapy, and that she was likely to improve significantly over the next 12 months.  AR 280.

Plaintiff was incarcerated again in August 2001.  She received a three year prison term after she was arrested for shoplifting with her daughter and an alleged friend in May 2001.  AR 342.  While incarcerated, she indicated that she was not under a doctor's care for any medical problems and had no medical complaints.  AR 323.  She also indicated that she was in good health except for swollen ankles.  AR 335-336.  She reported a history of depression, but a mental status examination revealed no abnormalities and merited no psychiatric diagnosis.  AR 331-332, 338.

On October 2, 2001, Plaintiff complained of problems getting out of bed.  AR 309.  X-rays showed early degenerative changes of the lumbar spine and right knee.  AR 312, 325.  The physician who reviewed the x-ray diagnosed early arthritis.  AR 306.

On November 13, 2001, Plaintiff complained of right foot pain and bilateral hand pain and numbness, more in her right than left.  She was diagnosed with possible early carpal tunnel syndrome, osteoarthritis, and possible plantar fascitis.  AR 305.

On November 19, 2001, Plaintiff was precluded from prolonged standing or walking for more than 30 minutes, as well as kneeling and squatting.  AR 304.

In August 2002, Plaintiff was restricted from lifting, pushing or pulling more than 10 pounds.  AR 318.

After she was released from prison, Plaintiff sought treatment for back pain, cough, constipation, earache, frequent headaches, heartburn and hemorrhoids.  AR 352-357.  Subsequent

reports indicate more treatment for various conditions, including diarrhea, respiratory tract infections, sinusitis and a boil. AR 296-99, 301. Plaintiff was diagnosed with and treated for hypertension, and was given medication for back pain. AR 285-292, 294, 320.

On December 28, 2002, Plaintiff saw Dr. Linder for another consultive examination. She complained of low back pain shooting down the bilateral lower extremities to her feet, and bilateral hand numbness. Plaintiff's gait was normal and she was not using an assistive device. Range of motion testing was normal. Her left wrist showed positive Tinel's sign, but repeated nerve compression tests were negative. Plaintiff had tenderness to palpation of the lumbosacral paraspinals. Sensory testing was normal. Dr. Linder opined that there was no clinical evidence to suggest fibromyalgia, but diagnosed carpel tunnel syndrome and lumbosacral musculoligamentous sprain and strain. He opined that Plaintiff could lift 10 pounds occasionally, 20 pounds frequently, stand and/or walk for a total of six hours in an eight-hour day, and sit for a total of six hours in an eight hour day. Plaintiff should refrain from frequent climbing, stooping and crouching, as well as frequent squeezing and gripping with the left hand. Plaintiff also appeared to have limitations in visual acuity. She did not need an assistive device for any distance or terrain. AR 359-362.

On January 2, 2003, Plaintiff saw Michael G. Musacco, M.D., for a psychiatric evaluation. Plaintiff reported that she was unable to work because she could not stand for long periods of time. On mental status examination, Plaintiff responded with vague answers, preventing Dr. Musacco from obtaining specific details about her emotional complaints. She reported mood swings, marked by feelings of sadness, hopelessness, crying spells and passive suicidal thoughts. He diagnosed depressive disorder, not otherwise specified and antisocial personality features. Although Plaintiff reported auditory hallucinations, she was unable to provide detail to confirm the symptoms. He opined that Plaintiff's primary limitations revolve around her medical condition, but that her daily activities and social functioning are impacted to some degree by her symptoms of depression. Dr. Musacco noted that Plaintiff was able to function in the community and prison setting without significant decompensation in her mental and emotional functioning. Plaintiff could understand, remember and carry out simple

instructions, but may have difficulty responding appropriately to coworkers, supervisors and the public in light of her lack of work-related skills and irritability.  Because Plaintiff "has managed to function her entire life without having to work. . .it may be difficult for her to change this pattern without support or opportunity."  Personality and lifestyle factors may make it difficult for Plaintiff to begin working, but no mental or emotional problem would prohibit work.  AR 363-366.

On January 17, 2003, State Agency physician Arthur Jing, M.D, completed a Physical Residual Functional Capacity Assessment form.  He opined that Plaintiff could lift 50 pounds occasionally and 10 pounds frequently, could stand and/or walk about six hours in an eight-hour workday, and could sit for about six hours in an eight-hour workday.  She could occasionally climb, balance, stoop, kneel, crouch, and crawl.  AR 387-394.  This assessment was affirmed on April 29, 2003.  AR 394.

On January 22, 2003, State Agency physician Harvey Biala, M.D., reviewed the evidence and determined that Plaintiff had a severe mental impairment.  AR 373, 383.  He opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, and in her ability to interact appropriately with the general public.  She could perform simple, repetitive tasks with limited public contact.  AR 368-369.

Medical records show that Plaintiff received physical therapy for her back and knee in February and March 2003.  AR 401-410.

In April 2003, State Agency physician Anne M. Khong, M.D., completed a Psychiatric Review Technique Form.  She indicated that a finding of non-severe for Plaintiff's psychiatric impairments was appropriate, considering her mental status exams and the fact that there has been no material change since the last ALJ's decision.  AR 425-427.  She opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions, but was otherwise able to perform work activities.  AR 428-430.

Plaintiff returned to physical therapy in May 2003 for her back pain.  AR 458, 461, 463.

In June 2003, Plaintiff complained of constant left knee pain, which was causing difficulty sleeping.  She was given a walking cane and medication.  AR 455.

In December 2003, Plaintiff was diagnosed with left knee strain, lumbosacral strain and left knee derangement. AR 447. She was given pain medication. AR 447. She also had previous problems with her right knee. AR 451-452.

On January 21, 2004, Plaintiff's treating physician Howard R. Jackson, M.D., completed a form for the California Department of Health and Human Services regarding Plaintiff's ability to participate in CALWorks activity. AR 465-468. He indicated that Plaintiff was not able to work. AR 465. He further indicated that she could stand and/or walk for zero to two hours at a time, for two to four hours per day, and could sit zero to two hours at a time, for zero to two hours per day. She had no restrictions in using her hands, fingers or feet for repetitive movements. AR 466. She could lift/carry 15-20 pounds occasionally and 10 pounds frequently. She could never climb or balance and could occasionally perform all other postural activities. AR 467.

On April 6, 2004, Dr. Jackson filled out a similar form. He gain opined that Plaintiff was not able to work. AR 469. He further indicated that she could stand and/or walk for two to four hours at a time, for two to four hours per day, and could sit two to four hours at a time, for two to four hours per day. She had no restrictions in using her hands, fingers or feet for repetitive movements. AR 469. She could lift/carry 15-20 pounds occasionally and 10 pounds frequently. She could never climb and could occasionally perform all other postural activities. AR 470.

At the hearing, Plaintiff submitted a September 7, 2004, report by Ralph Rogers, MFT. He diagnosed dysthymic disorder, adult antisocial behavior, rule out malingering, personality disorder not otherwise specified, antisocial and borderline features. AR 473. He opined that Plaintiff did not appear to be disabled by mental illness, and that her presentation and motives for seeking treatment should be evaluated with caution "as secondary gain issues may be playing a role." AR 473. Plaintiff was unable to give a clear timeline about her symptoms and did not appear to be telling the truth. AR 473. Her presentation did not match the severity of her symptoms as she described them. AR 473.

//

//

ALJ's Findings

The ALJ first explained that Plaintiff filed a prior application for SSI benefits, which was denied by the ALJ on January 30, 1997. This created a presumption of continuing non-disability, but Plaintiff was able to meet her burden of proving changed circumstances by alleging new impairments and presenting new and material evidence. AR 17.

The ALJ found that Plaintiff has the severe impairments of a history of back and knee pain, left wrist weakness and depressive symptoms. AR 18. He determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry 10 pounds frequently, 20 pounds occasionally, stand and/or walk six hours in and eight hour workday, and sit up to six hours in an eight hour workday. She could occasionally stoop, crouch, crawl, but was precluded from frequent squeezing and gripping with the left hand and was limited to simple, repetitive tasks with limited contact with the public. AR 18. The ALJ found that Plaintiff's allegations of pain and limitation were not totally credible. AR 20. Relying on the VE's testimony, he found that Plaintiff could perform other work, i.e., hand packer. AR 22-23.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (history of back and leg pain, wrist weakness and depressive symptoms) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) retains the RFC to perform a significant number of jobs in the national economy. AR 23-24.

Plaintiff argues that (1) the ALJ failed to properly assess Dr. Jackson's statements; and (2) the ALJ failed to carry his burden at step five of the sequential evaluation process.

//

//

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

**DISCUSSION**

A.   Treating Physician Opinion

      Plaintiff argues that the ALJ failed to properly assess Dr. Jackson's opinions set forth in the January 21, 2004, and April 6, 2004, CALWorks forms. As set forth above, the forms indicate that Plaintiff has been disabled since January 2002 and has substantial limitations that preclude work. Plaintiff contends that Dr. Jackson's statements are more than mere statements of disability, as the ALJ finds, and that the remainder of the record is not inconsistent with his findings.

      It is true that the medical opinion of a claimant's treating physician is entitled to "special weight." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988); *Valencia v. Heckler*, 751 F.2d 1082, 1088 (9th Cir. 1985). Reliance on the opinion of the treating physician is based not only on the fact that he is employed to cure, but also on his greater opportunity to observe and know the patient as an individual. However, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallenes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). An ALJ may reject a contradicted treating physician's opinion on the basis of clear findings that set out specific, legitimate, reasons for the rejection. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

      Here, the ALJ accepted the findings of Dr. Linder, who examined Plaintiff twice as a consultant examiner, in making his RFC determination. AR 21. In rejecting Dr. Jackson's opinion that Plaintiff could not work, the ALJ explained that Dr. Jackson "never indicated in his clinic notes that claimant was 'disabled,'" and did not indicate what criteria he used to base his determination of disability. AR 21. The ALJ further explained that there was no indication that Dr. Jackson used the legal standards and considerations as prescribed by the Social Security Act. AR 21. He explained that a mere statement of disability alone, or checking a few boxes on a form, "certainly does not present a persuasive argument" and is not binding. AR 21.

      As the ALJ indicates, the forms on which Dr. Jackson indicated that Plaintiff was disabled are check-the-box forms that include no objective findings upon which his opinions are based, and don't even state the impairment(s) that are the cause of Plaintiff's alleged disability.

AR 465-467, 468-470.  Nor do Dr. Jackson's clinical notes provide additional support or any indication of a severe impairment.  AR 447-457, 459-460.  While his notes indicate diagnoses of knee problems and objective findings of decreased range of motion, the notes do not necessarily support the extent of limitations found by Dr. Jackson.  In fact, his most recent notes, from December 2003, indicate no abnormal musculoskeletal findings.  AR 447-448.  A brief and conclusionary form opinion which lacks supporting clinical findings is a legitimate reason to reject a treating physician's conclusion.  *Magallenes,* 881 F.2d at 751.

Plaintiff disagrees with the ALJ's rejection in part because the remainder of the record "is not inconsistent" with his findings.  Opening Brief, at 6.  She cites her pain medications and certain objective findings that she contends support Dr. Jackson's disability finding.  In reviewing her pain medications, the ALJ concluded that since she had been taking the same medications for some time, she must be getting optimal relief.  AR 20-21.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (an ALJ is entitled to draw inferences logically flowing from the evidence).  Insofar as Plaintiff cites Dr. Linder's notation that she used a walker, Dr. Linder explained that Plaintiff obtained the walker from a friend and opined that she did not need an assistive device to ambulate.  AR 271, 274.  Similarly, Plaintiff's citation to the Department of Corrections limitations do not support her position.  Those limitations were imposed because of Plaintiff's foot pain, not the impairments she complains of here, and were limited in time to February 28, 2003.  AR 305, 318.

It is the ALJ's function to resolve conflicts in the medical record.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.1995); *Magallanes,* 881 F.2d at 751.  As set forth above, the ALJ may reject the controverted opinion of the treating physician so long as he sets forth specific, legitimate, reasons for the rejection.  The ALJ did so here.  AR 21.

B.   <u>Step Five Decision</u>

Plaintiff contends that the ALJ failed to carry his burden at step five of the sequential evaluation process because neither he nor the VE provided the description for "packer" as identified in the Dictionary of Occupational Titles ("DOT").  Plaintiff argues that the DOT codes for "packer" describe a position that Plaintiff is not capable of performing.  Plaintiff further

contends that the VE failed to explain his departure from the DOT, and the ALJ's reliance on his testimony is therefore legal error.

At step five, the Commissioner must show that a claimant can perform other jobs that exist in significant numbers in the national economy in order to find a claimant "not disabled." 42 U.S.C. § 1382c(a)(3)(b); 20 C.F.R. § 416.920(g); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996). The regulations provide that the ALJ may take administrative notice of job data contained in a number of sources, including the DOT. 20 C.F.R. § 404.1566(d)(1). The DOT is not the sole source of admissible information concerning jobs. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995).

Although the DOT raises a presumption as to the job classification, the presumption is rebuttable. *Id.; Terry v. Sullivan,* 903 F.2d 1273, 1277 (9th Cir.1990). The ALJ may rely on expert testimony that contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation. *Johnson*, 60 F.3d at 1435. Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality or inferences drawn from the context of the expert's testimony. *See Light v. Social Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). For example, in *Johnson,* "there was persuasive testimony of available job categories in the local rather than the national market, and testimony matching the specific requirements of a designated occupation with the specific abilities and limitations of the claimant." *Id.* at 1435.

Plaintiff argues that the DOT codes for "packer" identify it as a medium exertional position with a reasoning level of at least two. As Plaintiff was found to have an RFC for light work, with a restriction to simple, repetitive tasks, she argues that the VE deviated from the DOT without explanation.

In his testimony, the VE identified approximately 24,000 hand packer positions in California. AR 499. Given Plaintiff's exact limitations (i.e., no frequent squeezing or gripping with the left, non-dominant hand), the VE testified that this number would be reduced by 40%. AR 499. Plaintiff is correct that neither the VE nor the ALJ discussed the DOT. However, as was the case in *Johnson*, the departure was justified because the VE described the characteristics

and requirements of jobs in the local area, i.e. California. *Id.* at 1434, n. 7. The court explained that the "DOT is not invariably controlling, particularly where local job characteristics are concerned." *Id.* Plaintiff's argument is without merit.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff, Ruletta Watson.

IT IS SO ORDERED.

Dated: __July 22, 2006__             __/s/ Dennis L. Beck__
3b142a                                                     UNITED STATES MAGISTRATE JUDGE